# Third District Court of Appeal
## State of Florida

Opinion filed July 13, 2022.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D21-384
Lower Tribunal No. 19-4477
_____

**Karenza Apartments, LLP, etc.,**
Appellant,

vs.

**City of Miami, etc.,**
Appellee.

An Appeal from the Circuit Court for Miami-Dade County, Spencer Eig, Judge.

Stearns Weaver Miller Weissler Alhadeff & Sitterson, P.A., and Darrin J. Quam and  Maria A. Fehretdinov and Jason S. Koslowe, for appellant.

Victoria Méndez, City Attorney, and Eric J. Eves, Assistant City Attorney, for appellee.

Before EMAS, HENDON, and BOKOR, JJ.

HENDON, J.

Karenza Apartments, LLP ("Karenza") seeks to reverse a final summary judgment in favor of the City of Miami ("City"). We affirm in part, and reverse in part.

Karenza's property is located at 100 NE 38th Street, Miami, Florida, across the street from the Design District Special Area Plan ("SAP"), and adjacent to I-95, and until recently, within the Geographical Area defined by the City's Mural Ordinance.[1] If a property owner is in the Geographical Area as defined in the Mural Ordinance, a qualified advertiser may be allowed to hold a temporary use mural permit, and as a permittee enter into agreements to rent space on the host property to display advertising murals.[2] From 2013

---

[1] The Mural Ordinance authorizes the "display of art or graphics with minimal commercial message on buildings and walls" but only "within certain commercial and special districts of the city." § 62-601, Miami, Fla., Code. https://library.municode.com/fl/miami/codes/code_of_ordinances.

[2] The Mural Ordinance establishes procedures that "allow for the pre-qualification of applicants to display art or graphics on buildings and walls." § 62-601. Once qualified, an applicant may seek a "temporary permit" (i.e., a mural permit), as defined in the ordinance. Id. An applicant must be a "person or entity who holds or obtains or has been issued a Florida state license for outdoor advertising." § 62-602, Miami, Fla., Code (defining "licensee"); see also § 62-603(a)(12), Miami, Fla., Code (requiring "[p]roof that the applicant is a licensee"). Even if an entity is qualified to obtain a mural permit, it must participate in a lottery. The City issues "no more than 45 mural permits at any one time; however, no more than 25 mural permits may be issued at any one time and in any one city commission district." § 62-604, Miami, Fla., Code. Further, the Ordinance expressly provides that "[t]he issuance of a mural permit under this division does not create a vested

to August 2017, Karenza's property was located within the City's Mural Ordinance Geographical Area and derived significant rental income from hosting advertising murals displayed on its property facing I-95.

In March 2014, Karenza entered into a lease agreement with Becker Boards, a national advertising company ("Becker Lease"). Becker applied for and received two mural permits to place advertising murals on Karenza property facing I-95.[3] The Becker Lease also provided for constructing a multimillion-dollar rooftop buildout to install a larger mural, approximately the same size as the one at a neighboring property located at 3704 NE 2nd Avenue ("3704 Property"), also facing I-95. In August 2015, the City approved the permit to allow Karenza to build a 2,100 square foot structure on top of its building for the mural display to face I-95. Karenza subsequently spent thousands of dollars toward planning, upgrades, and construction of the rooftop advertising structure.[4] In April of 2016, however, Karenza terminated its lease agreement with Becker for non-payment.

---

right or proprietary or compensable interest in any permit for any permittee." § 62-606(13), Miami, Fla., Code.

[3] It is important to note that Becker, not Karenza, is the qualified temporary permit holder. Karenza, as the property owner, does not hold the mural permit.

[4] Note that only two other properties are similarly situated geographically which would enable them to host advertising murals: the 3704 Property and

3

In 2017, the City amended its Mural Ordinance. In the amended ordinance, Karenza was specifically excluded from the special Geographical Area where commercial murals could be displayed. At the time the Mural Ordinance was amended, Karenza did not have an existing permittee with a temporary mural permit or a lease agreement with an advertiser. The record indicates, however, that Karenza did have a contingent lease agreement with a qualified mural permittee pending a favorable outcome of the mural amendment process.

In June 2017, the City presented its proposed ordinance amendment to the Planning, Zoning and Appeals Board ("PZAB") to preserve the mural rights of all interstate facing properties. The City deferred consideration for months. Subsequently, the City submitted a proposed Mural Ordinance to the PZAB. The PZAB advised the City Commission to revise the proposed ordinance to afford Karenza's property the same treatment provided to the 3704 Property, but which the City declined to do. The Amended Mural Ordinance 13698 was effective in August 2017. The new boundaries drawn by the City in the August 2017 amendment left Karenza's property outside of the Geographical Area where murals are permitted. Consequently,

the NE 40th Street Property. Karenza's property was the only one of the three properties to host a mural permittee.

4

Karenza's ability to host advertising murals was effectively eliminated despite being similarly situated to neighboring properties in both location and structural ability to host murals.[5]

Karenza filed a complaint against the City of Miami asserting one count under the Bert J. Harris Act, section 70.001(1), Florida Statutes (2017).[6] The Bert J. Harris Act provides compensation to property owners for damages caused by government regulation even where it does not necessarily rise to the level of a constitutional taking. A Bert J. Harris Act claimant does not

---

[5] Karenza asserts that the decision to amend the Mural Ordinance to exclude its property from the Geographical Area was influenced by real estate developer Craig Robins and his entities Dacra and Miami Design District Associates ("Dacra/MDDA"), which allegedly considered the wall-sized advertising inconsistent with high-end retail development within the SAP. Karenza's property and the 3704 Property are outside of the SAP. Karenza alleges that the 3704 Property struck a private deal with Dacra/MDDA, in which Dacra/MDDA obtained all content rights and revenue in exchange for the 3704 Property's exemption from the new Mural Ordinance restrictions. Karenza allegedly declined to cede all control of its mural property rights to Dacra/MDDA, and argues that, as a result of Karenza's refusal, the private developer manipulated the ordinance amendment process to eliminate Karenza's property from the special Geographical Area.

[6] Section 70.001(2) of the Bert J. Harris Act provides, in relevant part:

> When a specific action of a governmental entity has inordinately burdened an existing use of real property or a vested right to a specific use of real property, the property owner of that real property is entitled to relief, which may include compensation for the actual loss to the fair market value of the real property caused by the action of government, as provided in this section.

have to prove the local government acted nefariously, only that the regulation inordinately burdened an existing use or vested right. On the parties' cross motions for summary judgment, the trial court granted the City's motion for final summary judgment. Karenza appeals.

Discussion

When evaluating a claim made under the Bert J. Harris Act, a trial court must first assess whether the claimed "existing use of real property" or the claimed "vested right to a specific use of real property" actually existed. Mojito Splash, LLC v. City of Holmes Beach, 326 So. 3d 137, 140 (Fla. 2d DCA 2021); Ocean Concrete, Inc. v. Indian River Cnty., Bd of Cnty. Comm'rs, 241 So. 3d 181 (Fla. 4th DCA 2018). If it finds either, "it must next determine whether the government action inordinately burdened the property." Ocean Concrete, 241 So. 3d at 186 (quoting § 70.001(6)(a), Fla. Stat. (2008)).

At the December 14, 2020, hearing on the parties' cross-motions for summary judgment, the trial court noted that both the prior and current ordinance provide that the issuance of a mural permit does not create a vested right or any compensable interest for any advertiser permittee.[7] Thus, the court reasoned, the existing temporary use Karenza had did not

---

[7] § 62-606(13), Miami, Fla., Code.

create a vested right, and the amended ordinance did not inordinately burden Karenza. The fact that an advertiser permittee has no vested right pursuant to the mural ordinance does not, however, inform the analysis under the Bert J. Harris Act as it applies to the <u>property owner</u>. It remains to be determined whether Karenza, as the property owner, has a reasonable, investment-backed expectation in hosting a mural such that the City's amended mural ordinance "inordinately burdened" an "existing use" of Karenza's real property pursuant to the Bert J. Harris Act. Karenza had hosted qualified permittees for many years, derived significant income from advertising leases, spent thousands of dollars to construct a new mural structure pursuant to the City's approval of that project, and had a contingent lease agreement with a qualified mural permittee pending a favorable outcome of the mural amendment process.

Whether a property owner's "investment-backed expectation" in its property is "reasonable" is determined objectively by assessing whether a landowner's expectation was possible under the then-existing land use regulations governing the property, and the then-existing physical conditions of the specific property. <u>See</u> <u>Ocean Concrete</u>, 241 So. 3d at 189. That objective analysis indicates that a property is "inordinately burdened" as a matter of law where "nothing about the physical or regulatory aspects of the

7

property at the time of the government regulation made [the property owner's] expectations for the development [at issue] unreasonable." Id. at 190. (parentheticals added).

The trial court on summary judgment found that Karenza had an existing use but failed to examine and objectively analyze whether Karenza had a reasonable, investment-backed expectation – based on the City's then-existing land use ordinance – that it could continue to host murals on its property by partnering with a qualified permittee. See id. (reversing and remanding under the Bert J. Harris Act, finding, based on the physical aspects of the property itself, appellants' investment-backed expectations were reasonable). Karenza, as a property owner, has inherent property rights, separate from the mural issue, that were obviated by the amended ordinance's sole carve-out of Karenza's property from the Geographical Area. See Coral Springs St. Sys., Inc. v. City of Sunrise, 371 F. 3d 1320, 1338 (11th Cir. 2004) ("[A]n extensive canvass of Florida's law establishes this: a party will be found to have a vested right in a permit or in a similar entitlement only if (1) it has incurred substantial expense in reasonable reliance on existing law; or (2) the city has passed a subsequent ordinance in a bad faith effort to prevent the property owner from obtaining a permit.").

8

On de novo review, we conclude that the trial court erred by granting summary judgment for the City on its cross-motion, as well as entering summary judgment against Karenza. Disputed facts remain as to whether 1) Karenza had reasonable, investment-backed expectations to use its property to continue to host murals; and 2) as a result of the City's amended mural ordinance, Karenza's property was disproportionately burdened because Karenza can no longer objectively attain its reasonable investment-backed expectations as a matter of law, and 3) whether damages result from those findings.[8] We therefore reverse the summary judgment orders and remand for further proceedings. As the trial court found that Karenza had an

---

[8] Section 70.001(3)(e), Florida Statutes (2017), provides:

The terms "inordinate burden" and "inordinately burdened":

1. Mean that an action of one or more governmental entities has directly restricted or limited the use of real property such that the property owner is permanently unable to attain the reasonable, investment-backed expectation for the existing use of the real property or a vested right to a specific use of the real property with respect to the real property as a whole, or that the property owner is left with existing or vested uses that are unreasonable such that the property owner bears permanently a disproportionate share of a burden imposed for the good of the public, which in fairness should be borne by the public at large.

existing use, and the City did not cross-appeal that conclusion, we do not disturb that ruling on remand.

Affirmed in part, reversed in part, and remanded for further proceedings.